# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CALVIN T. ANDREWS, JR.,

      Petitioner,

v.                                                    Case No. 3:21-cv-320-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## <u>ORDER</u>

### I.   <u>Status</u>

Petitioner, an inmate of the Florida penal system, is proceeding on an Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 6) and an Amended Memorandum of Law (Doc. 7). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for second-degree murder. <u>See</u> Doc. 6 at 1. Petitioner is serving life imprisonment. <u>See</u> <u>id.</u> Respondents filed a Response (Doc. 10; Response) with exhibits (Docs. 11-1 to 11-35; Ex.). Petitioner filed a Reply (Doc. 14) and "Points and Authorities in Support of Reply" (Doc. 17). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

---

Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not

mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope

v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> ""opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights.'" Duncan v.
> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting Picard v. Connor, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity," the
> prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan
> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality
> of a state prisoner's conviction and sentence are guided
> by rules designed to ensure that state-court judgments
> are accorded the finality and respect necessary to
> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine
> of procedural default, under which a federal court will
> not review the merits of claims, including

> constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>,

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to

show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.[5]

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's

---

[5] This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").

representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   Statement of Facts

The following statement of facts is taken from Petitioner's initial brief on direct appeal:

> Labreka Evans died on April 28, 2015, from injuries she sustained from being struck by a bullet two (2) days earlier. That single bullet passed through her forearm and right breast, and went into her abdomen where it hit her liver. On the morning of April 26, 2015, she and her live-in boyfriend, Defendant Andrews, were at home and having a protracted argument over his infidelity with other women. Close-by neighbors knew an argument was going on—and, in particular, they could hear Ms. Evans['] voice and make out her words. Only the Defendant and Ms. Evans were present when the gun discharged. The shooting took place in the residence they shared, along with Tyler Evans (about 10 years old) and Skye Evans (about 6 years old). Skye is the Defendant's biological daughter with Ms. Evans. Their

Duval County residence was located within 1-3 minutes of Shands Hospital by automobile.

Andrews' trial testimony was that Ms. Evans became very upset with him after he returned home in the late morning of April 26, 2015, following an early morning rendezvous with another woman. Part of her anger stemmed from continuing displeasure over the fact that he had fathered a child with yet another woman almost exactly a year earlier. Secondly, she'd just discovered some condoms in his pockets while he was taking a shower, and she was very intent on finding out where he'd gone off to earlier that morning. When he told her he didn't need the condoms for her, she hit him in the face with her fist. He called her a "switchhitter" in retaliation. She went into the bedroom. When she returned to the living room area, she was carrying a cosmetic device that contained a razor blade. After removing the razor blade from the device she charged him with the blade in her right hand and began swinging wildly at him multiple times while holding his shirt. He believed she was, in the heat of the moment, trying to slit his throat. She then reached down and picked up a handgun from where it was lying on the sofa. When she pointed it at him, he swiped down at her hand holding the gun. While they were still grappling over the gun, it went off. She continuously had her hands on the gun as they struggled. Ms. Evans indicated she'd been shot and began to bleed heavily. The Defendant helped her to the car and, after searching about for and locating his keys, rushed her to the nearby hospital.

Andrews reached the ambulance ramp at Shands Hospital at approximately 12:55 p.m. He was frantic and emotional. His shirt was torn. Officer Weippert arrived almost immediately. Andrews told

Weippert he and Evans were having an argument at their house on Woodland Street when the gun went off.

Andrews denied telling any of the neighbors, immediately post-shooting, that Ms. Evans tried to kill herself—though he might have said something to the effect that she shot herself. He denied telling anyone that she had stabbed herself. He denied there being any exchange inside the house wherein he threatened to shoot Ms. Evans, and to which she had replied "Go ahead, you'll spend the rest of your life in prison." He denied ever having his finger on the trigger of the gun, and asserted Ms. Evans maintained possession of the gun at all times. He had truthfully told law enforcement that he and Ms. Evans had struggled over the gun and then it discharged. However, there were matters he did not initially tell them. For example, he did not initially tell officers that she had pointed the gun at him, or that she had tried to kill him by coming after him with the razor blade. He didn't mention he'd left the house early that morning to have sex with another woman. Then unaware of just how serious her medical condition was, he didn't want to say anything that would possibly send her to jail for trying to kill him because he had cheated on her.

Shirley Bodie lived across the street from the Defendant and Evans in April of 2015. Of the two, she knew Evans better. On the morning of April 26, 2015, she and her daughter, Quaishonda Bodie, were looking after a sizeable number of children, including Tyler and Skye Evans, who were playing. Andrews and Evans were arguing about him having gotten another woman pregnant. She could hear Evans saying "leave, leave, leave." She watched Skye go across the street to her own house for either a few seconds or a few minutes. When Skye returned to the front porch of the Bodie residence, Skye told her brother to "put your fingers in your ears, you're going to hear a pop." Seconds later, a gun shot rang out. Bodie watched as Tyler bolted to his house, then exit[ed] screaming

"Mommy hurt. Calvin got the gun." Soon, Evans came out, trying to walk toward the car. She was bleeding heavily. Perhaps 20 seconds later, Andrews came outside and helped her into the front passenger-side seat of the car. When Defendant returned to the house, Bodie went over to where Evans was seated and calling for help. Evans grabbed Bodie's hand and said "don't leave. This n[*]gger tried to kill me." Then, the Defendant came back out to the car, got in, and drove away with Evans. He told Ms. Bodie he could get her to the hospital faster by car, than by waiting for the ambulance to arrive.

Quaishonda Bodie estimated the argument between the Defendant and Evans went on for 2-plus hours at fluctuating volume levels. She could only make out what Evans [was] saying. She overheard Skye tell her brother "cover your ears, you're going to hear a pop" just seconds before a shot rang out. She testified to Tyler running home then exiting the house crying "Mama's hurt. Calvin got the gun." She claimed Andrews told her that Evans shot herself in an effort to kill herself.

Patrolman Terence Peoples took Andrews into custody at the hospital. He was resistant to being handcuffed because of wanting to go inside to check on Evans. He asked repeatedly for any information about her condition, and about the whereabouts of his children. He signed various consent forms when requested by officers. He volunteered they had been arguing, and that the gun went off while Evans was playing with it. Over several hours of custody, Peoples didn't give Andrews any information on Evans' condition. In fact, interrogating officers subsequently assured Andrews, falsely, that her medical condition was such that they had been able to speak with her at the hospital.

Andrews consented to a search of his car. Detective Pfister collected a Glock handgun from the

rear floorboard. A substance which appeared to be blood could be seen on its grip. Under a port[f]olio was a gun magazine. There were 17 live rounds in the magazine, and a spent casing was in the weapon's chamber. The slide of the gun was in a forward position, and there was a spent casing in the chamber.

Detective Whittlesey went to Defendant's residence on April 26th with a consent-to-search in hand. He collected a projectile but found no casing. He collected a razor blade from the blood-stained living room floor. He was unable to reach any conclusions about the relative positions of the Defendant and Evans at the time the gun discharged.

No latent prints of value were obtained from the firearm or razor blade. DNA analyst, Sukhan Warf, obtained a full DNA profile from swabs related to the handgun and the razor blade. Her profile was a match for Ms. Evans, so her testing confirmed the presence of Evans' DNA on the gun as well as the razor blade.

Peter Lardizabal, a firearm analyst at FDLE, testified the recovered projectile and casing had, in fact, been fired in the recovered 9 mm Glock pistol. He testified there were two likely explanations for how the spent casing had remained in the chamber of the gun. One was that the expended cartridge was picked up and placed back in the firearm after discharge. Another was that the full retraction of the slide to the rear was somehow impeded. This impediment, for example, could be caused by a physical obstruction of the gun's slide mechanism. He found the pistol to be in working order so ejection of the spent cartridge would be generally anticipated.

Tyler Evans, age 11, testified that on the day of the shooting, he was playing with his sister Skye, and other children. Though mostly outside, he was inside the house at one point long enough to hear Andrews say to his mother, "I'm going to shoot you,"--and to

hear his mother reply, "Do it and you'll go to jail for the rest of your life." It was sometime later when Skye told him to " . . . cover your ears because you might hear a pop." After his mother was shot, he heard Andrews say "she shot herself." He never saw either his mother or Andrews with any gun. He heard three shots. Neither Shirley Bodie nor Quaishonda Bodie crossed over to his house prior to his mother and Andrews departing in the car.

Valerie Rao, M.D., performed the autopsy examination on Evans, who died as a result of a single gunshot to the abdomen. She was 29 years of age. She was 5'6" in height, and weighed 273 lbs. The path of the bullet entered her forearm and exited to strike her right breast, then traveled on into her abdomen where it hit her liver before exiting her lower back. Dr. Rao first offered the view that the wound to Evans' forearm was a defensive wound, as were cuts to the fingers of her right hand. She believed the gun barrel was less than 2 inches from Evans' forearm when fired. She did not believe the wound was self-inflicted or that Evans was holding the gun when it discharged. On cross-examination, Dr. Rao acknowledged the <u>only</u> reason she classified the forearm wound as "defensive" was because the wound occurred to Evans' arm. As for the purported "defensive" cuts to Evans' right hand and fingers, the medical examiner acknowledged she had never been informed a razor blade with Ms. Evans' blood on it had been recovered from the living room floor. She acknowledged the cuts to Evans' right hand and fingers were consistent with her wielding a sharp instrument like a double-edged razor blade in her hand.

The State called Investigator Joseph Stronko as a rebuttal witness. In the rebuttal case, the State played a DVD of the lengthy interrogation of Andrews. The interrogating officers erroneously believed Evans had been shot multiple times. Over the course of 4-plus hours, Andrews repeatedly characterized the shooting

as an accident which happened while they were fighting over the gun and he was trying to break away from Evans and leave. He denied pointing the gun and shooting her. He described himself as acting in self-defense because she first attacked him with the razor blade, before she then picked up the gun and threatened to shoot him. He said he tried to take the gun away from her and, in part, briefly succeeded. However, he could not break free from her. Though it was in his hand when it discharged, they were still tussling when the gun accidentally went off. Andrews encouraged the officers to verify his account by speaking to Evans. At the end of the interrogation, Stronko arrested Andrews.

Ex. D at 10-19 (internal record citations omitted).

## IV.   <u>Analysis</u>

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to file a pretrial motion pursuant to Florida Statutes § 776.012(2) for a stand your ground hearing to seek immunity from prosecution. Doc. 6 at 4. Petitioner contends that he clearly acted in self-defense, but his counsel advised him that "Stand Your Ground immunity would not or could not apply to his particular set of facts." <u>Id.</u>; <u>see</u> Doc. 14 at 6-22 (arguing that counsel's lack of knowledge of the applicable law deprived Petitioner of his right to seek pretrial immunity); <u>see also</u> Doc. 7 at 7; Doc. 17 at 2-6.

Petitioner raised this claim in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The state court identified <u>Strickland</u> as the controlling precedent and denied the claim:

> In Ground Three, Defendant asserts that trial counsel was ineffective for failing to file a Motion to Dismiss based on [the] "Stand Your Ground" statute. Once again the Defendant's own motion rebuts his entitlement to relief on this ground. His counsel, after consulting with him advised the Defendant that Defendant's statements to police prohibited a filing of a "Stand Your Ground" motion as the Defendant never claimed self-defense. He always asserted the shooting was an accident. All prior exhibits regarding the Defendant's statement pretrial and at trial are applicable in this claim as well. This Court finds Defendant has failed to show deficient performance or that he was prejudiced by counsel's alleged deficiency.

Ex. I at 55.

Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed an initial brief, Ex. J, and the state declined to file an answer, Ex. K. The First District Court of Appeal per curiam affirmed the denial without issuing a written opinion. Ex. L.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. The statute Petitioner refers to reads as follows:

> A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to

> himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

Fla. Stat. § 776.012(2).

During his police interrogation, which was video recorded and played for the jury, Petitioner repeatedly explained that the shooting was an accident. See Ex. C at 790-932. At one point, Petitioner stated that he was "in self-defense," but immediately changed his mind saying, "Well, no, I wasn't in self-defense like I'm - - (Unintelligible.)." Id. at 851. The detective then stated, "I understand what you're saying, but you were kind of in defense mode. You were kind of reacting to something that was going on at the time. I'm not saying you were being attacked with a knife or whatever, self-defense and in fear for your life kind of thing. Y'all were in a disagreement, an argument. Things got heated, got out of control and something happened and you're saying it's an accident, correct?" Id. Petitioner responded, "Exactly. . . . And she [(the victim)] was - - she will say it's an accident." Id. at 851-52.[6]

---

[6] Petitioner cannot rely on trial testimony to argue that his counsel should have filed a pretrial motion to dismiss.

Based on this evidence and upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

**B. Ground Two**

Petitioner argues that his trial counsel was ineffective by failing to request a jury instruction on self-defense justifiable use of deadly force to challenge the intent element of the charged offense. Doc. 6 at 5. According to Petitioner, because "the jury never received the justifiable use of deadly force instruction they were not able to decide whether Petitioner was justified in his use of force (i.e. grabbing the firearm) resulting in an accidental discharge." Doc. 14 at 22. He explains that "because the accidental infl[i]ction of [the victim's] injury and the defense of self-defense were so intertwined[,] the jury could reasonably find that the accident resulted from the justifiable use of force. Thus, an instruction of self-defense was not logically precluded." Doc. 17 at 3-4.

Petitioner raised this claim in his Rule 3.850 motion. The state court identified <u>Strickland</u> as the controlling precedent and denied the claim, reasoning as follows:

> In Ground one, Defendant alleges counsel was ineffective for failing to request a self-defense justifiable use of deadly force instruction. The Defendant's own motion details that his discussion with his counsel reflects that counsel did not believe he had grounds to argue self-defense based on the Defendant's statements to police prior to trial. The transcript of the trial also shows that the Defendant's statements to police Officers Peoples and Weippert prior to trial [and] his videotaped interview with police the day of the murder raised a defense that the shooting occurred by accident. Thus the Defendant would not be entitled to a jury instruction on the justifiable use of deadly force. The standard instruction on justifiable and excusable homicide as given by the court sufficiently apprised the jurors. At trial the Defendant added some version of the victim charging at him with a razor blade and that she held the gun on him, but even so he did not state that he shot her. He continued to state it was an accident. The transcript of the Defense closing makes it clear that the strategy and theory of defense was that the shooting was accidental.

Ex. I at 52-53 (internal record citations omitted).

Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed an initial brief, Ex. J, and the state declined to file an answer, Ex. K. The First DCA per curiam affirmed the denial without issuing a written opinion. Ex. L.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.

> As a general matter, an assertion of accidental injury will preclude an instruction on self-defense, since self-defense claims require the defendant to admit to the charged conduct. Williams v. State, 588 So. 2d 44, 45 (Fla. 1st DCA 1991). However, at least

> two Florida appellate courts have held that where a
> defendant's assertions of accidental injury and self-
> defense "are so intertwined that the jury could
> reasonably find that the accident resulted from the
> justifiable use of force," a self-defense instruction
> should be given. Id.; accord Mills v. State, 490 So. 2d
> 204, 205 (Fla. 3d DCA 1986).

Heredia v. Sec'y, Fla. Dep't of Corr., 566 F. App'x 853, 855-56 (11th Cir. 2014)

(citations modified); see also Hair v. State, 17 So. 3d 804, 806 (Fla. 1st DCA

2009); McInnis v. State, 642 So. 2d 831, 832 (Fla. 2nd DCA 1994).

The record supports counsel's strategic decision to pursue an excusable

homicide defense instead of self-defense. Counsel's strategy was to convince the

jury that the shooting was simply an unfortunate accident. See Ex. C at 1043,

1046, 1049, 1050. And Petitioner's pretrial statement and trial testimony more

strongly supported the theory of an accidental shooting versus self-defense or a

justifiable use of deadly force. Counsel could have reasonably determined that

Petitioner's best chance at defeating the second-degree murder charge was to

focus on showing that the shooting was an accident rather than self-defense.

Petitioner fails to show that counsel's strategic decision was "'so patently

unreasonable that no competent attorney would have chosen it.'" Dingle v. Sec'y

for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting Adams v.

Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Even assuming deficient performance, Petitioner has not shown prejudice. The jury was not without any instructions regarding Petitioner's theory of defense. The trial court read the following standard instructions:

> The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon a defendant or to commit a felony in any dwelling house in which the defendant was at the time of the killing.

> The killing of a human being is excusable and therefore lawful under any one of the following three circumstances: One, when the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or two, when the killing occurs by accident and misfortune in the heat of passion upon any sudden and sufficient provocation or, three, when the killing is committed by accident and misfortune resulting from sudden combat if a dangerous weapon is not used and the killing is done in a cruel - - is not done in a cruel and unusual manner.

Ex. C at 1085.

Despite these instructions and Petitioner's trial testimony that the victim was trying to "kill" him and that he was simply trying to get out of "harm's way," see Ex. C at 694, 737, 751, 755, the jury still found Petitioner guilty of second-degree murder. As such, considering the record, Petitioner has not shown that but for counsel's failure to request a self-defense instruction, the outcome of his trial would have been different.

Therefore, upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Two is denied.

### C. Ground Three

According to Petitioner, his trial counsel was ineffective by failing to raise a self-defense theory. Doc. 6 at 6; Doc. 14 at 24-25. He asserts that the arguments his counsel advanced were "illogical." Doc. 6 at 6.

Petitioner raised this claim in his Rule 3.850 motion. The state court identified <u>Strickland</u> as the controlling precedent and denied the claim as follows:

> In Ground Five, Defendant claims counsel was ineffective for failing to raise a viable defense and or incorporate the self-defense theory. The Defense was faced with the statements the Defendant made as well as the evidence of the victim's injuries. The defense can[]not conjure a defense, he can only work with the evidence and his client[']s testimony. Counsel can[]not be deemed ineffective for proceeding ethically and not raising meritless arguments.

Ex. I at 56 (internal record citations omitted). Petitioner appealed and the First DCA per curiam affirmed the denial without issuing a written opinion. Ex. L.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Three is denied.

**D. Ground Four**

Petitioner argues that his trial counsel was ineffective for misadvising him as to the legal availability of a stand your ground defense or self-defense based on Florida Statutes § 776.012(1), because Petitioner was in a struggle with the victim. Doc. 6 at 7. Petitioner explains that he is advancing "a single argument based upon three separate issues as a result of counsel['s] deficient performance." Id. First, Petitioner argues that his counsel failed "to advise [him that] he was a victim of a forcible felony (aggravated assault with a firearm) or potentially the victim of murder which is applicable to a claim of self defense." Id. Second, counsel failed to advise him "of his ability to advance a self defense justifiable use of force claim asserting the intertwined theory; because of the specific fact, a struggle took place over a firearm and [the victim's] injury was the direct result of that struggle." Id. Third, counsel failed to file a motion to dismiss asserting his "justifiable use of nondeadly force" which "justified the

deadly force use[d] here because his use of nondeadly force and the accidental infliction cause[d] by the discharge of the firearm (deadly force) w[ere] intertwined." Id.[7]

Petitioner raised this claim in a successive Rule 3.850 motion. See Ex. GG at 122-26. The postconviction court, citing to Rule 3.850(h) which addresses second or successive motions, dismissed this claim, along with others:

> Defendant raises nine grounds in the instant motion, the majority of which are premised on ineffective assistance of counsel. Defendant states in the instant Motion that the issues raised are new or different compared to those already raised and were unknown to him at the time he drafted and filed his initial motion. Defendant maintains a certified law clerk at his housing facility discovered these new grounds. Defendant alleges that when he filed his original 3.850 motion he was planning to file an amendment, but this Court ruled on his original motion too quickly.

> The grounds raised in the instant Motion were all readily discernable from the record at the time Defendant filed his original motion. This Court finds Defendant fails to show good cause as to why he did not raise these grounds in his original pleading. Further, Defendant's contention that this Court's rapid ruling on his original Motion hindered his ability to supplement with the instant grounds does little to sway this Court's decision; once a defendant files a motion, the court gains jurisdiction to rule on the pleading. These grounds involve events that occurred during the pendency of Defendant's case and, therefore, Defendant could have raised them in his

---

[7] To the extent Petitioner's claims overlap the claims raised in Grounds One through Three, the Court denies such claims for the reasons stated supra.

> original motion. See Carbajal v. State, 148 So. 3d 539, 540 (Fla. 2d DCA 2014) ("We recognize that '[t]he burden is on the movant to show extraordinary circumstances and good cause for having failed to raise the 'new' claim in the prior motion.'"); see generally Morris v. State, 134 So. 3d 1066, 1067 (Fla. 4th DCA 2013) ("[P]risoner's recent discovery of an already existing case simply does not constitute extraordinary circumstances or good cause."). Accordingly, this Court finds it appropriate to dismiss Grounds (1)-(8) of the instant Motion as an abuse of procedure.

Ex. GG at 158-59. Petitioner appealed, and the First DCA per curiam affirmed the dismissal of this claim without issuing a written opinion. Ex. HH.

The state court's invocation of a procedural bar to this claim renders the claim procedurally defaulted on federal habeas review. Petitioner argues that Martinez applies to show cause to excuse his procedural bar. In Martinez, the Supreme Court recognized a narrow exception to the rule that an attorney's error in a postconviction proceeding does not constitute cause for a procedural default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 17. To establish cause under Martinez, Petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." Id.

26

at 14; see also Lambrix v. Sec'y Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is not substantial if it lacks merit or is wholly without factual support. See Martinez, 566 U.S. at 15-16.

Considering the record, the Court finds this claim is not substantial, and the limited exception outlined in Martinez does not apply. Petitioner fails to otherwise show cause or prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if this Court did not address the claim on the merits. Accordingly, Ground Four is denied.

### E. Ground Five

According to Petitioner, "fundamental error occurred when [his] jury received no instruction on justifiable use of deadly force." Doc. 6 at 8 (capitalization omitted). Alternatively, he argues that if the Court does not find fundamental error occurred, then his trial counsel was ineffective for failing to ensure this instruction was included. Id.; see Doc. 14 at 28-36.

Petitioner asserts that he raised this fundamental error claim on direct appeal. According to Respondents, however, Petitioner failed to present the federal nature of the claim to the state court as he only addressed this claim in terms of state law. See Doc. 10 at 61. A review of Petitioner's initial brief on direct appeal reveals that Respondents are correct—Petitioner raised this fundamental error claim in terms of state law only. See Ex. D at 47-50; see also Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[T]he

fundamental error question is an issue of state law, and state law is what the state courts say it is."). Because Petitioner failed to present the federal nature of this claim to the state court, the claim is procedurally barred on federal habeas review. Petitioner fails to show cause or prejudice to excuse the bar. He also has not shown a fundamental miscarriage of justice would result if this Court does not address the claim on the merits. As such, Petitioner's fundamental error claim in Ground Five is due to be denied.

As to Petitioner's claim that his trial counsel was ineffective for failing to request an instruction on the justifiable use of deadly force, he, through counsel, raised this claim on direct appeal, arguing that the error is apparent on the face of the record. <u>See</u> Ex. D at 50-52. The state filed an answer brief, Ex. E, and Petitioner filed a counseled reply, Ex. F. The First DCA per curiam affirmed Petitioner's judgment and sentence without issuing a written opinion. Ex. G.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Petitioner's ineffectiveness claim in Ground Five is denied.

## F. Ground Six

Petitioner argues that his trial counsel was ineffective for "failing to call exculpatory witnesses who would have bootstrapped self defense struggle theory and cause not guilty verdict." Doc. 6 at 9 (capitalization omitted); see Doc. 14 at 36-44. He contends that Michael Knox, Greg Crawford Jr., and Skye Evans would have provided exculpatory testimony on his behalf. Doc. 6 at 9.

Petitioner raised this claim in his Rule 3.850 motion. The state court identified Strickland as the controlling precedent and denied the claim as follows:

> In Ground Four, Defendant claims counsel was ineffective for failing to call exculpatory witnesses Michael Knox, Skye Evans and Greg Crawford Jr. The record shows that the court limited the scope of Mr. Knox's testimony. Further, that defense counsel had Mr. Knox under subpoena and made a last determination not to call that witness. The decision as to what witnesses to call was specifically approved by the Defendant. As to the witness Skye Evans, the record is clear that she was not of sufficient age to be competent. The witness Tyler Evans was called by the state and his testimony reflects that information gleaned from Skye would more than likely not be exculpatory for the Defense. Finally, according to both Shirley Bodie and Quaish[o]nda Bodie[,] Greg Crawford did not have any contact with the events in question other than to dissuade both Ms. Bodies from helping the victim.

Ex. I at 55-56. Petitioner appealed, and the First DCA per curiam affirmed the denial of his Rule 3.850 motion without issuing a written opinion. Ex. L.

29

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). During the trial, the trial court specifically inquired of Petitioner whether there were any other witnesses or evidence that he wanted his counsel to present and Petitioner, under oath, answered, "No, sir." Ex. C at 630-31. Petitioner now argues that at the time of this colloquy with the trial court, he was under the impression that Knox and Crawford still would be called to testify after him. Doc. 14 at 39. But immediately prior to Petitioner's colloquy with the trial judge, his counsel advised that the only other witnesses were Ruzanka, Petitioner, and possibly Knox. See Ex. C at 624-25. Counsel specifically advised the court: "I can inform there is a chance that we might make a decision not to call [Knox] as a witness." Id. at 625. After Petitioner testified, counsel advised the court that if he was to present any more evidence the next day, it would just be Knox's testimony. Id. at 761. The next day, counsel announced rest. Id. at 770. Petitioner was present in the courtroom when counsel made these statements.

Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's

adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Six is denied.

## G. Ground Seven

Petitioner argues that his trial counsel was ineffective for failing to object and move for a mistrial during the state's closing arguments. Doc. 6 at 11. He claims that the prosecutor made "denigrating" comments about Petitioner and his defense. Id. Specifically, Petitioner takes issue with the prosecutor's comments that "'[t]he only thing missing from the defendant's story yesterday is four little words, once upon a time,'" and that his story was a "'work of fiction'" and a "'lie.'" Id.

Petitioner raised this claim in his Rule 3.850 motion. The state court summarily denied it:

> In Ground two, Defendant alleges counsel was ineffective for failing to move for a mistrial upon the State's prejudicial improper comments. The transcripts of the state[']s closing, shows that counsel did in fact object and was overruled. As to the merits of the comments at issue, the proper method for reviewing the effect and prejudice of the prosecutor's comments is to place them in context. Rose v. State, 985 So. 2d 500, 508 (Fla. 2008); Ham v. State, 580 So. 2d 868,868 (Fla. 1991). Attorneys are allowed a wide latitude to argue to the jury during closing argument. Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982). Attorneys may also draw logical inferences and advance legitimate arguments in their closing statements. Thomas v. State, 748 So. 2d 970, 984 (Fla.

1984). The prosecutor is permitted to make comments that stem from evidence admitted at trial or that which may be "reasonably inferred from the evidence." Ford v. State, 702 So. 2d 279,280 (Fla. 4th DCA 1997) (citing Huff v. State, 437 So. 2d 1087, 1090 (Fla. 1983)); see Merck v. State, 975 So. 2d 1054, 1064 (Fla. 2007) (finding no impropriety in prosecutor's comments based on facts in evidence and common-sense inferences from those facts); McKenzie v. State, 830 So. 2d 234, 238 (Fla. 4th DCA 2002) ("While recognizing that wide latitude should be permitted in closing argument, a prosecutor's comments must be based on facts in evidence or fair inference from those facts."). Moreover, attorneys should suggest what conclusions the jury can draw from the evidence. Valentine v. State, 98 So. 3d 44, 55, 56 (Fla. 2012); see Ruiz v. State, 743 So. 2d 1, 4 (Fla. 1999) (explaining counsel must not "obscure the jury's view with personal opinion, emotion, and nonrecord evidence"). The prosecutor may argue credibility of the witness, so long as it is based on facts in evidence. See Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006) (holding "an attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.").

When a defendant claims that a prosecutor has made an improper comment during closing argument such that a new trial is required, the defendant must show:

> [firstly,] that the comments were improper or objectionable and that there was no tactical reason for failing to object. Secondly, a defendant must demonstrate that the comments deprived 'the defendant of a fair and impartial trial, materially contribute[d] to the conviction, [were] so harmful or fundamentally tainted as to require a new trial, or [were]

32

so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.'

Stephens v. State, 975 So. 2d 405, 420 (Fla. 2007) (citation omitted). Ultimately, "trial counsel cannot be deemed ineffective for failing to object to arguments that are proper." Rogers v. State, 957 So. 2d 538, 549 (Fla. 2007). In addition, courts will not find that trial counsel was ineffective if counsel's decision could be considered sound trial strategy. Gore v. State, 964 So. 2d 1257, 1269-70 (Fla. 2007); see McCoy v. State, 113 So. 3d 701, 713 (Fla. 2013) (concluding counsel's failure to object "actually operated to protect McCoy from a negative perception by the jury and, possibly, prejudice against his defense"). "It will not be presumed that . . . (jurors) are led astray, to wrongful verdicts, by the impassioned eloquence and illogical pathos of counsel." Blair v. State, 406 So. 2d 1103, 1107 (Fla. 1981) (quotations omitted); cf. Nowell v. State, 998 4 So. 2d 597, 607 (Fla. 2008) (rejecting prosecutor's comments that unnecessarily appealed "to the sympathies of the jurors").

In the instant case counsel did object and was overruled. The comments in question did not rise to the level of fundamental error and the Defendant has failed to show that the comments in question deprived him of a fair trial.

Ex. I at 53-55 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial of his Rule 3.850 motion without issuing a written opinion. Ex. L.

33

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.[8] During the state's closing argument, the prosecutor reminded the jury of the differences between Petitioner's statements during his pre-trial interview with police and his trial testimony. Ex. C at 1009. The prosecutor then said, "The only thing missing from the defendant's story yesterday is four little words, once upon a time." Ex. C at 1009. Defense counsel objected, arguing that the comment was "denigrating the defense." Id. The trial court responded: "Ladies and gentlemen, remember that what the attorneys say is not evidence or your instruction on the law. You may continue." Id. at 1010. The prosecutor then said, "That and the demonstration were a work of fiction that that defendant came up with for you guys. That was not possible, and his testimony yesterday from the stand was a lie." Id. Defense counsel again objected, arguing the prosecutor's comment was improper. Id. Again, the court reminded the jury "that what the attorneys say is not evidence or your instruction on the law." Id. Defense counsel requested a ruling on the objection, and the judge responded, "I just gave it." Id. The prosecutor then continued making comments that Petitioner now classifies

---

[8] The Court notes that on direct appeal, Petitioner, through counsel, argued that the prosecutor's statements during closing arguments denied him a fair trial. See Ex. D at 40-43. In the state's answer brief, the state argued that the prosecutor was simply commenting on the changing nature of Petitioner's story. See Ex. E at 22-26. The First DCA per curiam affirmed Petitioner's judgment and sentence without issuing a written opinion. Ex. G.

as "improper" and to which his counsel failed to object and move for a mistrial. Doc. 6 at 11 ("This was the beginning of a myriad of improper comments counsel failed to object to and or move for mistrial which embedded a prejudicial mistrust for [Petitioner] by his jury."); see Doc. 14 at 45-50.

"The statements of a prosecutor will justify reversal of a conviction if they undermined the fairness of the trial and contributed to a miscarriage of justice. Furthermore, a prosecutor's statements during closing argument require reversal only if the comments are both improper and prejudicial to a substantial right of the defendant." United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992) (internal quotations and citations omitted). Here, the jury was repeatedly instructed that what the lawyers say is not evidence and they are required to base their verdicts solely on the evidence presented during the trial. Considering the record, the prosecutor's comments did not undermine the fairness of the trial or contribute to a miscarriage of justice; thus, counsel was not ineffective for failing to object more so than he did or move for a mistrial.

Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Seven is denied.

## H. Grounds Eight, Nine, and Ten

In his Reply, Petitioner concedes Grounds Eight, Nine, and Ten. Doc. 14 at 51. Thus, these Grounds are denied.

## I.  Ground Eleven

Petitioner argues that his appellate "[c]ounsel failed to raise [on direct appeal] that the factual element of actual possession [of a firearm] was not found by the jury." Doc. 6 at 15. He contends "this failure is crucial because its failure amounts to every element in the information not being establish[ed] beyond a reasonable [doubt] to prove [Petitioner] guilty of the offense." Id.; see Doc. 14 at 52-59.[9]

Petitioner raised this ineffective assistance of appellate counsel claim in his state court amended habeas petition. Ex. Z at 32-40. The First DCA per curiam denied the amended petition "on the merits" without directing a response from the state. Ex. BB.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Petitioner was charged by information with second-degree murder. The information read:

> CALVIN TYRONE ANDREWS, JR. on April 26,
> 2015, In the County of Duval and the State of Florida,
> did unlawfully and by an act Imminently dangerous to

---

[9] To the extent Petitioner also argues that his sentence is illegal, he acknowledges that Respondents' "argument is well taken" and he "concedes to the illegal sentence sub-claim raised herein." Doc. 14 at 58.

another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, shoot Labreka Evans, a human being, thereby inflicting upon the said Labreka Evans certain mortal wounds from which she did thereafter continually languish and languishing, did live until April 28, 2015, on which date she died from said mortal wounds, and during the commission of the aforementioned Second Degree Murder, the said CALVIN TYRONE ANDREWS, JR. did carry, display, use, threaten to use or attempt to use a firearm and did actually possess and discharge a firearm and as a result of the discharge, death or great bodily harm was Inflicted upon any person, contrary to the provisions of Sections 782.04(2), 775.087(1) and 775.087(2)(a)3, Florida Statutes.

Ex. A at 23. At the conclusion of the case, the trial judge instructed the jury, in pertinent part, as follows:

I now instruct you on the circumstances that must be proved before Calvin Tyrone Andrews may be found guilty of murder in the second degree or any lesser included crime.

To prove the crime of murder in the second degree, the state must prove the following three elements beyond a reasonable doubt: One, Labreka Evans is dead.

Two, the death was caused by the criminal act of Calvin Tyrone Andrews.

Three, there was an unlawful killing of Labreka Evans by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.

37

An act includes a series of related actions arising from and performed pursuant to a single design or purpose.

An act is imminently dangerous to another and demonstrating a depraved mind if it is an act or series of acts that, one, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another and, two, is done from ill will, hatred, spite or an evil intent and, three, is of such a nature that the act itself indicates an indifference to human life.

In order to convict of second degree murder it is not necessary for the state to prove the defendant had an intent to cause death.

If you find that Calvin Tyrone Andrews committed murder in the second degree and you also find beyond a reasonable doubt that during the commission of the crime he discharged a firearm and in doing so caused great bodily harm to or the death of Labreka Evans you should find the defendant guilty of murder in the second degree with discharge of a firearm causing great bodily harm or death.

If you find that Calvin Tyrone Andrews committed murder in the second degree and you also find beyond a reasonable doubt that during the commission of the crime he discharged a firearm you should find the defendant guilty of second degree murder with discharge of a firearm.

If you find that Tyrone Calvin Andrews committed murder in the second degree and you also find beyond a reasonable doubt that during the commission of the crime he actually possessed a firearm you should find the defendant guilty of second degree murder with actual possession of a firearm.

. . . .

38

> To actually possess a firearm means that the defendant carried a firearm on his person or had a firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the crime.

Ex. C at 1086-88. The verdict form, in pertinent part, had the following selections for the jury to consider:

> We, the jury, find the Defendant guilty of Murder in the Second Degree, as charged in the information.
>
> <u>If you find the defendant guilty</u> of this lesser-included offense,[10] <u>you must choose one of the following findings</u>:
>
>> We find the Defendant discharged a firearm causing death or great bodily harm during the commission of the offense.
>>
>> We find the Defendant discharged a firearm during the commission of the offense.
>>
>> We find the Defendant actually possessed a firearm and did not discharge it during the commission of the offense.
>>
>> We find the Defendant did not actually possess or discharge a firearm during the commission of the offense.

Ex. A at 294 (emphasis added).

---

[10] This was a scrivener's error on the verdict form. Second-degree murder was not a lesser-included offense in this case.

The portion of the information regarding the actual possession and discharge of a firearm went toward the reclassification of second-degree murder, a first-degree felony, to a life felony.[11] It was not an essential element of second-degree murder. Indeed, at sentencing, the prosecutor explained the enhancement: "[B]ased upon the jury's finding that a firearm was utilized during the commission of this particular offense and it was discharged and caused great bodily harm, there is the requisite 25 year minimum mandatory sentence up to a potential life minimum mandatory sentence, which the court can impose at sentencing." Ex. A at 559. Thus, Petitioner's assertion that the jury did not find an essential element of the crime is misplaced. The jury specifically found that Petitioner was guilty of second-degree murder, and then separately found that he discharged a firearm which allowed for the

---

[11] At the time of the murder, the reclassification statutes read as follows:

"Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as . . . [i]n the case of a felony of the first degree, to a life felony." Fla. Stat. § 775.087(1)(a) (2015)

"Any person who is convicted of [murder], regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a "firearm" or "destructive device" as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." Fla. Stat. § 775.087(2)(a)3 (2015).

enhancement of second-degree murder (a first-degree felony) to a life felony. Finally, trial counsel did not object to the verdict form; thus, the issue was not preserved for appeal. Considering the record, appellate counsel was not deficient for failing to raise this claim on direct appeal.

Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Eleven is denied.

### J. Ground Twelve

In his Reply, Petitioner concedes Ground Twelve. Doc. 14 at 59. Thus, Ground Twelve is due to be denied.

### K. Ground Thirteen

Petitioner claims that his trial counsel was ineffective for failing to file an adequate motion for a new trial based on the verdict being contrary to the weight of the evidence. Doc. 6 at 17. Petitioner argues that counsel filed a "boiler plate motion . . . that was insufficient to warrant relief," and that "[c]ounsel should have argued with specificity to the evidence that supported [Petitioner's] theory." Id.; see Doc. 17 at 23-24.

Petitioner raised this claim in a successive Rule 3.850 motion. See Ex. GG at 111-13. He listed seven points that counsel should have raised in the motion for new trial. Id. at 111-12. The postconviction court, citing to Rule 3.850(h) which addresses second or successive motions, dismissed this claim, along with others:

> Defendant raises nine grounds in the instant motion, the majority of which are premised on ineffective assistance of counsel. Defendant states in the instant Motion that the issues raised are new or different compared to those already raised and were unknown to him at the time he drafted and filed his initial motion. Defendant maintains a certified law clerk at his housing facility discovered these new grounds. Defendant alleges that when he filed his original 3.850 motion he was planning to file an amendment, but this Court ruled on his original motion too quickly.
>
> The grounds raised in the instant Motion were all readily discernable from the record at the time Defendant filed his original motion. This Court finds Defendant fails to show good cause as to why he did not raise these grounds in his original pleading. Further, Defendant's contention that this Court's rapid ruling on his original Motion hindered his ability to supplement with the instant grounds does little to sway this Court's decision; once a defendant files a motion, the court gains jurisdiction to rule on the pleading. These grounds involve events that occurred during the pendency of Defendant's case and, therefore, Defendant could have raised them in his original motion. See Carbajal v. State, 148 So. 3d 539,540 (Fla. 2d DCA 2014) ("We recognize that '[t]he burden is on the movant to show extraordinary circumstances and good cause for having failed to raise the 'new' claim in the prior motion.'"); see generally

> Morris v. State, 134 So. 3d 1066, 1067 (Fla. 4th DCA
> 2013) ("[P]risoner's recent discovery of an already
> existing case simply does not constitute extraordinary
> circumstances or good cause."). Accordingly, this Court
> finds it appropriate to dismiss Grounds (1)-(8) of the
> instant Motion as an abuse of procedure.

Ex. GG at 158-59. Petitioner appealed, and the First DCA per curiam affirmed the dismissal of this claim without issuing a written opinion. Ex. HH.

The state court's invocation of a procedural bar to this claim renders the claim procedurally defaulted on federal habeas review. Petitioner argues that the limited exception in Martinez applies to this claim to show cause to excuse the procedural default. See Doc. 7 at 2-3.

After the trial, Petitioner's trial counsel filed a written motion for a new trial. See Ex. A at 326-28. At the beginning of Petitioner's sentencing hearing, counsel extensively argued the motion, and the trial court denied it. See Ex. A at 499-528.

The points Petitioner contends counsel should have made simply amount to a reweighing of the evidence—which is the province of the jury. Considering the record, the Court finds this claim is not substantial, and the limited exception outlined in Martinez does not apply. Petitioner fails to otherwise show cause or prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if this Court did not address the claim on the merits. Accordingly, Ground Thirteen is denied.

## L. Ground Fourteen

Petitioner contends that trial counsel was ineffective for failing to argue in the motion for judgment of acquittal that the state's evidence to support the element of "depraved mind" was circumstantial and "did not refute every reasonable hypothesis of innocence." Doc. 6 at 18 (capitalization omitted).

Petitioner raised this claim in a successive Rule 3.850 motion. See Ex. GG at 127-29. The postconviction court, citing to Rule 3.850(h) which addresses second or successive motions, dismissed this claim, along with others:

> Defendant raises nine grounds in the instant motion, the majority of which are premised on ineffective assistance of counsel. Defendant states in the instant Motion that the issues raised are new or different compared to those already raised and were unknown to him at the time he drafted and filed his initial motion. Defendant maintains a certified law clerk at his housing facility discovered these new grounds. Defendant alleges that when he filed his original 3.850 motion he was planning to file an amendment, but this Court ruled on his original motion too quickly.
>
> The grounds raised in the instant Motion were all readily discernable from the record at the time Defendant filed his original motion. This Court finds Defendant fails to show good cause as to why he did not raise these grounds in his original pleading. Further, Defendant's contention that this Court's rapid ruling on his original Motion hindered his ability to supplement with the instant grounds does little to sway this Court's decision; once a defendant files a motion, the court gains jurisdiction to rule on the pleading. These grounds involve events that occurred during the pendency of Defendant's case and,

> therefore, Defendant could have raised them in his original motion. See <u>Carbajal v. State</u>, 148 So. 3d 539,540 (Fla. 2d DCA 2014) ("We recognize that '[t]he burden is on the movant to show extraordinary circumstances and good cause for having failed to raise the 'new' claim in the prior motion.'"); <u>see generally</u> <u>Morris v. State</u>, 134 So. 3d 1066, 1067 (Fla. 4th DCA 2013) ("[P]risoner's recent discovery of an already existing case simply does not constitute extraordinary circumstances or good cause."). Accordingly, this Court finds it appropriate to dismiss Grounds (1)-(8) of the instant Motion as an abuse of procedure.

Ex. GG at 158-59. Petitioner appealed, and the First DCA per curiam affirmed the dismissal of this claim without issuing a written opinion. Ex. HH.

The state court's invocation of a procedural bar to this claim renders the claim procedurally defaulted on federal habeas review. Petitioner argues that <u>Martinez</u> applies to show cause to excuse his procedural bar. <u>See</u> Doc. 7 at 2-3; Doc. 14 at 61. Petitioner's trial counsel orally moved for a judgment of acquittal at the conclusion of the state's case in chief, arguing that the state failed to "present[] sufficient evidence to create a prima facie case as to prove second degree murder and in particular, . . . the defense believes that the state has failed to present sufficient evidence that the requisite mens rea was established by the state." <u>See</u> Ex. C at 576-80. The trial court denied the motion. <u>Id.</u> at 579-80. Counsel then renewed his motion for judgment of acquittal at the conclusion of his case. <u>See</u> Ex. C at 770. Counsel argued: "Specifically any evidence of the depraved mind that is required I believe in this circumstance is completely

circumstantial and as such I believe that [Petitioner's] explanation as to what happened is a reasonable hypothesis of innocence that has not been refuted by the State of Florida and as such, Your Honor, a judgment of acquittal would have to be entered." Id. The court again denied the motion. Id. at 770. Finally, counsel raised it again at the conclusion of all of the evidence, arguing that "the state has failed to present a prima faci[e] case to either a criminal act committed by [Petitioner] or the depraved mind evidence, ill will, hate or spite. Despite the state's rebuttal there is a reasonable hypothesis of innocence in this case and as such, the defense's position is the Judgment of Acquittal has to be granted." Id. at 986-87. The trial court again denied the motion. Id. at 987.

Petitioner's trial counsel did argue in the motion for judgment of acquittal that the state failed to prove the requisite mens rea and the evidence going to that point was circumstantial. Considering the record, the Court finds this claim is not substantial, and the limited exception outlined in Martinez does not apply. Petitioner fails to otherwise show cause or prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if this Court did not address the claim on the merits. Accordingly, Ground Fourteen is denied.

### M. Ground Fifteen

Petitioner asserts that his trial counsel was ineffective by allowing him to enter a plea to an "information that did not lawfully invoke the court's

jurisdiction because the information was filed contrary to Florida Statute[s §] 923.03(2)." Doc. 6 at 19. He further asserts that the allegations in the information "were not based on sworn testimony by the material witness." Id. He contends that counsel should have filed a motion to dismiss the information. Id.; see Doc. 17 at 24-25.

Petitioner raised this claim in a successive Rule 3.850 motion. See Ex. GG at 119-22. The postconviction court, citing to Rule 3.850(h) which addresses second or successive motions, dismissed this claim, along with others:

> Defendant raises nine grounds in the instant motion, the majority of which are premised on ineffective assistance of counsel. Defendant states in the instant Motion that the issues raised are new or different compared to those already raised and were unknown to him at the time he drafted and filed his initial motion. Defendant maintains a certified law clerk at his housing facility discovered these new grounds. Defendant alleges that when he filed his original 3.850 motion he was planning to file an amendment, but this Court ruled on his original motion too quickly.

> The grounds raised in the instant Motion were all readily discernable from the record at the time Defendant filed his original motion. This Court finds Defendant fails to show good cause as to why he did not raise these grounds in his original pleading. Further, Defendant's contention that this Court's rapid ruling on his original Motion hindered his ability to supplement with the instant grounds does little to sway this Court's decision; once a defendant files a motion, the court gains jurisdiction to rule on the pleading. These grounds involve events that occurred during the pendency of Defendant's case and,

therefore, Defendant could have raised them in his original motion. <u>See</u> <u>Carbajal v. State</u>, 148 So. 3d 539,540 (Fla. 2d DCA 2014) ("We recognize that '[t]he burden is on the movant to show extraordinary circumstances and good cause for having failed to raise the 'new' claim in the prior motion.'"); <u>see generally</u> <u>Morris v. State</u>, 134 So. 3d 1066, 1067 (Fla. 4th DCA 2013) ("[P]risoner's recent discovery of an already existing case simply does not constitute extraordinary circumstances or good cause."). Accordingly, this Court finds it appropriate to dismiss Grounds (1)-(8) of the instant Motion as an abuse of procedure.

Ex. GG at 158-59. Petitioner appealed, and the First DCA per curiam affirmed the dismissal of this claim without issuing a written opinion. Ex. HH.

The state court's invocation of a procedural bar to this claim renders the claim procedurally defaulted on federal habeas review. Petitioner argues that <u>Martinez</u> applies to show cause to excuse his procedural bar. <u>See</u> Doc. 7 at 2-3. Considering the record, the Court finds this claim is not substantial, and the limited exception outlined in <u>Martinez</u> does not apply. Petitioner fails to otherwise show cause or prejudice to excuse the procedural bar, nor has he shown a fundamental miscarriage of justice would result if this Court did not address the claim on the merits. Accordingly, Ground Fifteen is denied.

## N. Ground Sixteen

According to Petitioner, his "conviction and sentence w[ere] fraught with errors which when considered cumulatively prejudice the outcome." Doc. 6 at 20.

Petitioner raised this claim in his Rule 3.850 motion. The state court identified <u>Strickland</u> as the controlling precedent and denied the claim as follows:

> In Ground Six, Defendant claims the cumulative errors of trial counsel prejudiced the outcome of the proceedings. It is well-settled that a claim of cumulative error cannot stand in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. <u>Lukehart v. State</u>, 70 So. 3d 503,524 (Fla. 2011); <u>see</u> <u>Suggs v. State</u>, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail); <u>Parker v. State</u>, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."). Here, Defendant has not demonstrated that counsel was ineffective under either prong of <u>Strickland</u>. Accordingly, Defendant is not entitled to relief.

Ex. I at 56. Petitioner appealed, and the First DCA per curiam affirmed the denial of his Rule 3.850 motion without issuing a written opinion. Ex. L.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Assuming that cumulative error claims are cognizable on federal habeas review, none of Petitioner's individual ineffectiveness claims warrant relief; thus, there is nothing to accumulate. <u>See</u> <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012). Petitioner's trial counsel's alleged errors, neither individually

nor cumulatively, deprived him of a fair trial or due process. Thus, upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Sixteen is denied.

Accordingly, it is

**ORDERED**:

1.     The Amended Petition (Doc. 6) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[12]

---

[12] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/16
c:
Calvin T. Andrews, Jr., #J57058
Counsel of Record

51